## POLICE COURT—CITY OF ALBANY,

### April 7, 1914.

## THE PEOPLE v. RICHARD McDERMOTT.

(1.) SUNDAY LAWS *—PENAL LAW SECTION 2145—MOVING PICTURE SHOWS ON SUNDAY.

A moving picture show, operated in a theatre or other building, open to the public upon payment of an admission fee, is a "public show" within the prohibition of section 2145 of the Penal Law.

People v. Henleb, 22 N. Y. Crim. 551, (127 App. Div. 356) distinguished.

(2.) SAME—COMPLAINT.

A complaint which charges that defendant violated section 2145 of the Penal Law, by conducting a moving picture show at certain named premises, on Sunday, and did suffer and permit to be conducted and carried on a public show in said premises; that the public were permitted to enter such premises; and that thereby the repose and religious liberty of the community was seriously interrupted, held sufficient to charge a violation of such section.

*Daniel H. Prior*, Assistant District Attorney, for the People.

*William T. Byrne*, for the Defendant.

BRADY, P. J.:

The defendant herein was arrested by a police officer without a warrant, charged with a misdemeanor alleged to have been committed in the presence of the officer, to wit,—a violation of section 2145 of the Penal Law.

---

* See Notes, 18–407; 19–41; 22–43.

At the time that the defendant was brought to court, the police officer, Captain Keith, made complaint under oath alleging a violation of law as follows; that the defendant did on the 22nd day of March, 1914, at the City of Albany, N. Y. violate section 2145 of the Penal Law of the State of New York, in that he did on said day, which was Sunday, the first day of the week, maintain and conduct a moving picture show at premises No. 286 Central avenue, Albany, N. Y., known as the Star Theatre, said theatre being a public place; in that he did on the day above mentioned cause to be conducted, and did suffer and permit to be conducted and carried on, a public show in said theatre, to which show the public were invited, and that there did gather in said theatre and public place, several persons, who entered said premises for the purpose of attending said public show; that said show consisted of moving pictures, and that there was operated a stereoptician or moving picture machine, by means of which certain pictures were thrown on a screen in the front of said theatre, and that accompanying the throwing on said screen of the said pictures, there was a man playing a piano in said theatre; that deponent did see upon the screen in said theatre, a picture representing a person in the garb of a sister, in the act of covering a child with a cloth; that deponent is informed and believes that the name of said picture or group of pictures was "The Rosary;" that the source of deponent's information and the ground for his belief is a statement made to deponent by a man named Wagonert; that the public were permitted to enter said theatre, and said show was not a private show; that by maintaining said theatre and having same open to the public, and maintaining a public show on the said day above mentioned, Sunday, the repose and religious liberty of the community was seriously interrupted.

Upon that information the defendant was arraigned, and being represented by counsel, entered a plea of " Not Guilty "

at the same time demanding a jury trial. At that time a panel of jurors was drawn, and the case was set for trial March 30th, 1913. On that day the people were represented by the learned assistant district attorney, Mr. Prior. At this time, too, the defendant stated to the court that having come to the conclusion that there was no dispute over the facts of the case, and that the entire matter was a question of law to be decided by the court, he would waive trial by jury, and submit the matter to the court upon the state of facts set forth in the information, contending, of course, that such facts were not sufficient to constitute a violation of the section under which the defendant stands charged, or any violation of law.

The learned attorney for the defendant based his contention largely on the case of People v. Hemleb, reported in 127 Appellate Division Reports, page 356 (22 N. Y. Crim. 511) holding that said case settled the law, and that this court was bound by the law as therein laid down.

At the same time the assistant district attorney stated that the office he represented felt that they were controlled by such decision so far as their office was concerned, notwithstanding what their personal opinion might be.

It would therefore seem that the question presented to this court is, first,—whether or not the facts alleged in the information are sufficient to constitute a crime, that is, whether keeping open a moving-picture exhibition on Sunday, to which the public is invited, is a violation of the section referrred to in the complaint; and then, the case having been submitted on the facts alleged in the information,—whether defendant should be convicted for a violation of said law.

I approach this subject with deference, owing to the fact that I am called upon as a Justice of the Police Court, an inferior court, to determine a question which apparently in its make-up contains all of the phases of the case of People vs. Hemleb,

which case, the learned attorney for the defendant argues, has settled the law in this state as to the legality of moving picture shows on Sunday. As I say, the case at bar is in most respects similar to the Hemleb case, the one apparent difference being that in the complaint in the case now under consideration, we find the allegation that the " repose and religious liberty of the community was seriously disturbed."

I am inclined to the belief that, in order to become better acquainted with the matter before the court for determination, it will be necessary to familiarize ourselves with the decisions rendered on the questions similar to the one at bar, and with the circumstances surrounding those decisions.

After an exhaustive study of the cases, I find that the Hemleb case, in the Second Department, is the only case relative to the legality of moving picture shows on Sunday, which has ever reached an Appellate Division for judicial determination, and in only three or four judicial districts of the state has the matter been presented for consideration by justices of the supreme court.

The Hemleb case was decided in June, 1908, by a divided court, the prevailing opinion being written by the learned jurist, Mr. Justice Gaynor, Justices Woodruff and Jenks concurring, while a vigorous dissenting opinion was written by Justice Hooker, in which Justice Rich concurred.

In the prevailing opinion we find the law interpreted as follows,—

" The defendant was accused and convicted of conducting an illegal 'public show' on Sunday, in that he exhibited pictures by throwing them on a canvas screen in the usual way, and at the same time had a piano playing at intervals. No indecency or immorality is charged; that comes under another head of crime. The case would be the same no matter how edifying and improving the pictures; that they even illustrated the life and mission of Jesus, or the events of the Crusades,

would make no difference. Nor is there any question in the case of whether the defendant unlawfully carried on business on Sunday inasmuch as he charged an admission fee. No such charge was made against him, and it may be that none would lie."

After tracing at some length the history of the section alleged to have been violated. the opinion continues as follows,—

" The statute as it stood before the adoption of the Penal Code indisputably related to out-of-door sports, or things in the open only. This was the manifest legislative intention. To these public things (public in that sense) the Penal Code added ' or other public sports, exercises, or shows.' These words have to be construed in line with what precedes. They have to be construed in the light of the society of words in which they are found, under two familiar maxims which apply in full force in civil cases, and all the more so in criminal cases for obvious reasons; for criminal statutes cannot be left in doubt, not strained in construction to make out a crime. No crime exists which is not defined expressly or by necessary implication. The general words in question mean other like public sports, exercises or shows. The lineage of the statute as it is in the penal code shows its meaning. The original legislative object has never been changed but continued in such amendment. There is no ground for the argument that the general intention and scope of the original act has been departed from.

This becomes all the more manifest by the fact of the legislature passing a subsequent separate act prohibiting a long list of theatrical or stage plays, and performances not classed as out-of-door, or open. It was first made applicable to the city of New York only, and later to the whole state. and is section 277 of the Penal Code (now section 2152 of the Penal Law). If the phrase ' or other public sports, exercises or shows' in section 265 (now 2145 Penal Law) is to be given the meaning contended for by the learned district attorney, and adopted below, i. e., that it covers all shows or exhibitions indoors or outdoors or open, to which the public is invited, then section 277 adds nothing, it becomes mere rigamarole and superfluous."

It is very evident that the learned judge at the time of rendering his opinion in this case, considered the only matter before him for judicial determination, was whether or not an indoor exhibition or show came under this section as a " public

show." This is very evident from the terse and pointed manner in which he disposes of this matter.

But in addition to the Hemleb case there are other judicial decisions that will be helpful in learning the trend of judicial opinion, and determining the judicial definition of a public show.

In the case of People v. Poole, decided in June, 1904, and reported in 18 N. Y. Crim. 407, Mr. Justice Gaynor defines a public sport, game or show, as follows,—

"A public sport, game or show or entertainment, is one held out and given to the public."

In February, 1908, a decision was rendered by Justice Carr at Kings Special Term, in the case of People v. Finn, reported in 57 Misc., at page 659 (22 N. Y. Crim. 52). This was a case of a prosecution for showing moving pictures on Sunday, and is referred to by defendant in his argument on the law. In this case the learned justice discharged the defendant, and in doing so, among other things, had this to say,—

"The showing of moving pictures may, or may not constitute a violation of the statute in question. It all depends upon the method and purpose of such shows.

Where they are given as an incident to and for the purpose of illustrating, a lecture, which is in itself permissible, their showing does not fall within the intent of the statute  *  *  *  *  In this memorandum I have confined myself to the particular facts brought before me at this hearing. Whether or not the showing of some kind of moving pictures would constitute a violation of the statute is not before me. The showing of the pictures which figure in this proceeding clearly does not constitute a crime."

In the same month, at Erie County Special Term, Judge Pound rendered an opinion in the case of United Vaudeville Company v. Zeller, which I quote in full,—

" The Penal Code (now the Penal Law) prohibits the doing on Sunday of certain specified acts, which are declared to be 'serious interruptions of the repose and religious liberty of the community.' The doing of no act on Sunday is prohibited except for the reason that the doing of such act is an interruption of the repose and religious liberty of the community, but such repose is deemed to be interrupted by the doing of certain of such prohibited acts, however quietly said acts may be done.

All labor on Sunday, excepting the works of necsesity or charity, is prohibited. All trades, manufactures, agriculture or mechanical employments are prohibited on Sunday, except that such works or necessity are permitted as may be performed on that day so as not to interfere with the repose and religious liberty of the community.

All public traffic on Sunday is prohibited with certain exceptions deemed to be needful for the comfort of the community, and not interrupting its repose.

All theatrical performances on Sunday are prohibited.

All shooting, hunting, fishing, playing, horse racing, gaming, or other public sport, exercises or shows are prohibited upon Sunday, also all noises disturbing the peace of the day.

It is claimed on this hearing that a moving picture show open to the general public, to which an admission fee is charged, giving numerous exhibitions daily in a hall or theatre located on a principal street of the city, in close proximity to places of worship, does not come within any of the prohibited acts above set forth, and that it may lawfully open on Sunday. On motions for preliminary injunctions in the First judicial district, it has been held that such moving picture shows are not 'public shows' within the meaning of section 265 of the Penal Code (now section 2145 of the Penal Law) and injunctions have been granted, restraining police interference therewith on Sunday. In like motions in the Second judicial district the contrary has been held, and the injunctions have been denied. It has been held that the 'public shows' prohibited by section 265 (now 2145) are only those which are out-door in public view. It has not been clearly demonstrated why the legislature should have prohibited all out-door public shows, and also the performance of any tragedy, comedy, opera, ballet, farce, negro ministrelsy, negro or other dancing, wrestling, boxing, sparring contest, trial of strength, or any aerial, equestrian, or dramatic performance or exercise, or any performance or exercise of jugglers, acrobats, club performances or rope dancers on Sunday, and provided that aiding in such performance by advertisement or otherwise, should be a misdemeanor, and that every person who leases any place for the purpose of such performance is guilty of a misdemeanor, and should at the same time have intended to permit a moving picture show to open its doors on Sunday.

A fair construction of he Penal Code (now Penal Law) leads to the conclusion that all public shows are prohibited as 'serious interruptions to the repose and religious liberty of the community.'

The courts have repeatedly held that ball-playing on Sunday, for which an admission is charged, is a public show, whether noise actually disturbs the peace of the day or not, because the statute presumes that such ball-playing interrupts the repose of the community.

That seems to be the case with this plaintiff. It gives a 'public show' and it is to be presumed that such act if done on Sunday interrupts the repose of the community."

In March, 1908, in Monroe Special Term, in the matter of Moore v. Owen, Judge Foote, in rendering his opinion, has this to say,—

"This brings us to the question as to whether it was lawful for the proprietor of a theatre to continue his business on Sunday, prior to 1881."

Judge Foote had just finished an exhaustive review of the origin and development of the section in question,—

"The other statutes, previously in force, and continued and re-enacted in other sections of the Penal Code above quoted, were as follows,— 'There shall be no shooting, hunting, fishing, sporting, playing, horse-racing, gaming, frequenting of tippling houses, or any unlawful exercises or pastimes on the first day of the week, called Sunday * * * * nor shall there be any servile laboring or working on that day, excepting works of necessity and charity, unless done by some person who uniformly keeps the last day of the week, called Saturday, as holy time, and does not labor or work on that day, and whose labor shall not disturb other persons in their observance of the first day of the week as holy time.' If this statute has no application to theatres, then it was always lawful prior to 1881, for the proprietor of a theatre in Rochester to continue his business on Sunday the same as on a week-day, and to give on Sunday any show or form of entertainment which could lawfully be given on a week day, unless restrained by some local ordinance of the common council. I apprehend that, if this statute were capable of such construction, Sunday theatres in this state would have been the rule, and not, as they always have been, the exception. A diligent examination has failed to disclose a single reported decision of

the courts of this state prior to 1881, where the proprietor of any theatre or public hall was prosecuted for a supposed violation of this statute for continuing his business on Sunday.   Certainly the fact is, that it has been the common understanding of the people, as well as the bar, that the state statutes did not permit theatrical performances on Sunday.   It would have been offensive to the religious sentiments of the community, and entirely out of harmony with the Christian Sabbath as one of our civil institutions inherited from our ancestors who settled this country and formed our government, and brought it with them as an already long-existing institution."

After much discussion, and a very thorough consideration of the development of our Sunday laws, the learned Judge continues,—

"I think that it may be safely said that it is the policy of this state, as disclosed by its legislation from the earliest times, that all secular occupations not necessary to the welfare of the community should be discontinued on Sunday, both on account of the character of the day, and on account of the public policy involved, which regards the public interest as promoted by one day's rest in seven.   I think also that there has been shown no intent on the part of the legislature to discriminate in this respect between one occupation and another.   *   *   *   I feel bound to assume that the legislature did not intend to make an exception in favor of the theatre proprietor to enable him to carry on his business on Sunday for the sole purpose of making money, by simply varying the kind of exhibition produced on that day so as to avoid one answering to the names mentioned in section 277 of the Penal Code."

I would also like to read from the opinion of Judge Hooker in the Hemleb case, which, as I have said before, is a vigorous and well-presented dissenting opinion,—

"With the propriety or impropriety of the so-called Sunday laws, we, as a court, having nothing to do; our function is to give effect to those statutes as they are enacted by the legislature   *   *   *   *   One question for determination is whether the moving picture exhibition was a show, and if so, whether it was a *public* show within the meaning of section 265 of the Penal Code.   The law is plainly written, and its meaning cannot be obscured in much doubt.   The Century dictionary defines 'show' as a sight or spectacle, and *exhibition:* a pageant; a

play. The numerous cases at special term in the different departments, which have dealt with questions similar to that raised by this appeal, have all referred to the throwing of moving pictures upon a screen as a moving picture *exhibition*. The demonstration was certainly a show. It is suggested that because the legislature enacted section 277 of the penal code simultaneously with section 265, and therein forbade the performance of any tragedy, comedy, opera, ballet, farce, negro minstrelsy, dancing, wrestling, boxing with or without gloves, sparring contest, trial of strength, or any part or parts therein, or any circus, equestrian or dramatic performance or exercise, or any performance or exercise of jugglers, acrobats, club performers or rope dancers, on the first day of the week, and failed to declare against moving picture exhibitions therein, it must not have intended that section 265 should cover exhibitions of this kind. There are two answers; *first* section 265 is so plain that it needs no astute interpretation and successfully resists involved distinction and discrimination; and, *second*, it is provided by the latter part of section 277 that violations of its provisions are the subject of special penalties therein mentioned, *in addition* to the punishment provided for violation of section 265.

The Century dictionary defines the term 'public' as follows: of or belonging to the people at large; relating to or affecting the whole people of a State, nation, or community; *opposed to private; open to all the people;* shared in or *to be shared or participated in or enjoyed by people at large;* not limited or restricted to any class of the community; as, a public meeting. It is perfectly clear that any orderly person would have been permitted to enter the room where the moving pictures were presented by the defendant and view them as a part of the audience. The exhibition was not a private one; it was the opposite, namely, a public exhibition or show, which might be shared or participated in by any unobjectionable members of the people at large. To deny that the moving picture exhibition was other than a public show violates the common and well-accepted meaning of the English words.

It is said that the section refers to exhibitions or shows held out of doors rather than those held indoors because the reading of the section is that all shooting, hunting, fishing, playing, horse-racing, gaming or *other public* sports, exercises or shows are prohibited.

It may be admitted that hunting, fishing and horse-racing are invariably enjoyed out of doors; it cannot be doubted, however, that shooting, playing and gaming are often enjoyed within doors, so the distinction that the word 'public' means out of doors must fail. But however this may be, all of the sports and exercises specifically named in the section may be treated as public, that is, they may be shared or participated in or enjoyed by the people at large; hence, when the legislature

provides that other sports, exercises or shows are prohibited on Sunday, it merely means that in addition to the public sports and exercises mentioned theretofore in the section, other sports, exercises and shows which may be shared or participated in or enjoyed by the people at large, are also prohibited on Sunday. * * * * * I think the moving picture exhibition was a public show, which by section 265 of the Penal Code is prohibited on Sunday.

It must be admitted that every person placed in a judicial position, whether that person be the presiding officer of a superior court, or the magistrate of one of the courts of inferior jurisdiction, has upon him resting the responsibility of determining the question presented to him for judgment; in other words, I take it that every judicial officer, even the magistrate of a police court, should dispose of a matter before him for determination according to his judgment and interpretation of the law on such subject, and render his opinion accordingly, particularly when the magistrate so acting gives due consideration to the judicial decisions rendered in cases similar to and applying to the question at issue.

That is the responsibility resting upon this court at this time, and it is with a feeling that he is charged with this responsibility that the magistrate has approached this case.

After carefully considering the various opinions of the learned justices who have written on this subject, it seems to me that the following may be taken as facts;

That on no occasion has a case similar to the one at issue with the exception of the Hemleb case, been considered by an appellate court, and decided not a violation of law; and in that case the court was divided, the dissenting voices uttering strong words, and using conclusive reasoning, holding the moving picture exhibitions on Sunday a violation of law.

That in all the cases in the first and second departments relative to moving picture shows, in which they were held not a violation of law, a statement of facts was charged entirely dif-

ferent from the case at bar, and not nearly so strong, for even the Hemleb case did not charge a *disturbance of the repose and religious liberty of the community*, as the case at bar does.

That the Hemleb case is decided wholly upon the point that a moving picture show is not a *public show*, because it is held indoors, notwithstanding the fact that in the Poole case, Justice Gaynor defined a public show as *any show held open to the public*.

Here let me say that we are confronted with a very peculiar situation. Under the authority of the Hemleb case, if followed, it would seem that a moving picture show in a theatre would not be a violation of law, while a moving picture performance given in the open air, as is so often the case in the warmer months, is in contravention of the statute. It seems strangely inconsistent to think that the legislature would intend any such distinction as this.

That several of our learned judges at special term, held in Buffalo, Rochester, and New York, in decisions rendered a few months prior to the Hemleb decision, flatly decide that moving picture shows are *public shows*.

I must conclude that the case at bar is not a case similar in all respects to the Hemleb case, and that it differs in the important particular above set forth, i. e., that the case at bar alleges that *the repose and religious liberty of the community was disturbed*, which was not the case in People v. Hemleb.

If the Hemleb case is to be considered binding in the case before us, it means that the decision of a divided court in the Appellate Division of the Second Department must be taken as the law of the State, precluding all other courts of superior equal, or inferior jurisdiction from construing the law in moving picture cases, where the charge is a violation of the Sunday laws, and we must abide by the decision of three judges of the appellate division of the second department, as against the dissent-

ing opinion of two of their own body, in addition to the opinions of many of our supreme court judges who have expressed the same under a similar state of facts, contrary to the prevailing opinion in this case.

The learned attorney for the defendant argues that this court is bound to take the law from the Hemleb case, and is not permitted to make any different interpretation of the law than is therein set forth. As I stated before, I differentiate between these cases, but considering the authority he has submitted in support of his argument, the case of Fox Amusement Company v. McClellan, reported in 62 Misc., at page 100, I am led to believe that the reference there made intended only to declare that the law was binding upon inferior courts in the department in which the decision was rendered, and if that be the correct understanding of that decision, as I believe it is, this court finds itself faced with a matter upon which no decision has been rendered by any superior court in this judicial district, or in this department of the appellate division.

Therefore, viewing and construing the law as I do, I must first conclude that the law at all times intends to preserve the sanctity and dignity of our Sunday, that the moving picture show as complained of was a public show and as such disturbed the repose and religious liberty of the community, and that there is sufficient in the complaint to charge a violation of law; and the facts being admitted, to convict the defendant for a violation of the section alleged to have been violated, namely, section 2145 of the Penal Law.